# Gottschall, Appellant, *v.* Campbell.

*Constitutional law—Courts—Allegheny County Court—Act of May 5, 1911, P. L. 198—Uniformity—Procedure—Trial by Jury.*

1. Under Article V, Sec. 1, of the Constitution, providing that "the judicial power of this Commonwealth shall be vested in a Supreme Court, in Courts of Common Pleas, Courts of Oyer and Terminer and General Jail Delivery, Courts of Quarter Sessions of the Peace, Orphans' Courts, Magistrates Courts, and in such other courts as the General Assembly may from time to time establish," the legislature may not only establish courts similar to those enumerated, but also courts of a grade and character different from those expressly set forth.

2. It is a cardinal principle in the construction of constitutions that the language is to be interpreted in a plain and natural sense as understood by the people who adopted it.

3. The Act of May 5, 1911, P. L. 198, establishing a county court in Allegheny County is constitutional.   It does not violate Section 7, Article III of the Constitution, which forbids local or special legislation, nor Sec. 26 of Art. V, which requires that all law relating to courts shall be general and of uniform operation, and prohibits the legislature from creating other courts to exercise the powers vested by the Constitution in the judges of the courts of Common Pleas.

4. The Act of May 5, 1911, would be local and special, were it not for the fact that the Constitution itself has made a classification with reference to the creation, regulation and powers of the courts, in which the County of Allegheny is treated as a distinct division, and the County of Philadelphia as another, and in each of which counties the courts as to their needs and requirements are distinguished from the remaining counties in the state.

5. As the Act of May 5, 1911, provides for a new court of a different class or grade from any before created, and as it provides

for only one court of this grade, the law regulating it is uniform in the constitutional sense as expressed in *Sec. 26, Art. V* of the Constitutions. If other courts of the same grade shall be established, then all laws relating to that grade must be of uniform application.

6. The prohibition contained in the last clause of Section 26 of Article V of the Constitution, which prevents the General Assembly from creating other courts, to exercise the powers vested by the Constitution "in the judges of the Courts of Common Pleas and Orphans' Courts," has reference only to the powers vested in the judges of the Courts of Common Pleas as distinguished from the powers vested in the courts themselves. The act does not divest the judges of the Courts of Common Pleas or the Orphans' Court of any of their powers; nor does it infringe in any way upon the powers of jurisdiction of these courts, inasmuch as the jurisdiction of the County Court is concurrent and not exclusive.

7. The language of Section 6 (a) of the Act of May 5, 1911, cannot be construed as giving jurisdiction in all civil actions without limit as to amount. The limitation of $600 applies to all the actions to which reference is made.

8. The fact that the procedure provided by the act for the County Court differs from that which obtains in the Common Pleas, does not lay the act open to the objection that it is not uniform, nor is the provision for the service of writs of summons open to constitutional objection.

9. The provision of Section 8 relating to a trial by jury on request of either party, and the payment of the jury fee in advance, is not an abridgement of the constitutional right of trial by jury.

10. The provisions as to set off contained in Section 10 of the act are not unconstitutional; nor are the liens authorized under Section 11 objectionable.

11. One who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so.

MOSCHZISKER, MESTREZAT and STEWART, JJ., dissent.

Argued Oct. 30, 1911. Appeal, No. 201, Oct. T., 1911, by plaintiff from decree of C. P. No. 2, Allegheny Co., July T., 1911, No. 614, dismissing bill in equity in case of M. H. Gottschall v. I. K. Campbell et al., County Commissioners of Allegheny County, R. J. Cunningham, Controller of Allegheny County and George W.

Foster, Treasurer of Allegheny County.  Before FELL,
C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART
and MOSCHZISKER, JJ.  Affirmed.

Bill in equity for an injunction.  Before SHAFER, J.

The case involved the constitutionality of the Allegheny County Court Act of May 5, 1911, P. L. 198.

The court held that the act was constitutional and entered a decree dismissing the bill.

*Error assigned* was the decree of the court dismissing the bill.

*H. K. Siebeneck,* for appellant.—The act is local: Perkins v. Philadelphia, 156 Pa. 554; Blankenburg v. Black, 200 Pa. 629; Roumfort Co. v. Delaney, 230 Pa. 374; Ruan St., 132 Pa. 257; Wyoming St., 137 Pa. 494; Pittsburgh's Petition, 138 Pa. 401; Morrison v. Bachert, 112 Pa. 322; Com. v. Patton, 88 Pa. 258; McCarthy v. Com., 110 Pa. 243; Scranton v. Silkman, 113 Pa. 191; Philadelphia v. Haddington M. E. Church, 115 Pa. 291; Safe Deposit & Trust Co. v. Fricke, 152 Pa. 231; Strine v. Foltz, 113 Pa. 349; Henry Taylor Lumber Co. v. Carnegie Institute, 225 Pa. 486.

The Constitution does not classify the courts of Allegheny by themselves: Davis v. Clark, 106 Pa. 377; Com. v. Mathues, 210 Pa. 372; O'Mara v. Com., 75 Pa. 424; Ayars' App., 122 Pa. 266; Philadelphia v. Haddington M. E. Church, 115 Pa. 291.

The Act violates Article V. Section 6.

The Act is a local law authorizing the creation of liens: Philadelphia v. Haddington M. E. Church, 115 Pa. 291; Ruan Street, 132 Pa. 257; Wyoming Street, 137 Pa. 494; Com. v. Mathues, 210 Pa. 372.

*D. T. Watson, Thomas Patterson* and *W. B. Rodgers,* with them *Wm. A. Stone, Joseph Stadtfeld, A. B. Hay* and *Charles A. Woods,* for appellee.—The County of Allegheny is a separate class in the Constitution for pur-

poses of legislation in regard to courts: Wheeler v. Philadelphia, 77 Pa. 338; Seabolt v. Northumberland County Commissioners, 187 Pa. 318; Wilkes-Barre v. Meyers, 113 Pa. 395; Com. v. Bell, 4 Pa. Super. Ct. 187; Gallagher v. MacLean, 193 Pa. 583.

The power to create a court involves power to prescribe procedure.

OPINION BY MR. JUSTICE POTTER, January 2, 1912:

By the act of May 5, 1911, P. L. 198, the legislature established a county court in Allegheny County, and conferred jurisdiction upon it, in civil actions wherein money judgments were sought, and in actions of replevin, in which the sums demanded, or the value of the property replevined, does not exceed six hundred dollars; except in cases where the title to lands or tenements may come in question. Jurisdiction was also conferred in desertion proceedings and in appeals from summary convictions, and from judgments in suits for penalties before a magistrate or court not of record.

Averring that the act is unconstitutional, the plaintiff in this case, a taxpayer of Allegheny County, filed a bill in equity against the county commissioners to restrain them from expending any of the funds of the county, in providing accommodations for the new court. Defendants demurred to the bill, and the demurrer was sustained and the bill dismissed. Plaintiff has appealed and assigns for error the decree of the court below, dismissing the bill.

The power of the legislature to establish courts other than those named in the constitution, cannot be questioned. Article V Section 1 of the constitution provides that "The judicial power of this Commonwealth shall be vested in a Supreme Court, in Courts of Common Pleas, Courts of Oyer and Terminer and General Jail Delivery, Courts of Quarter Sessions of the Peace, Orphans' Courts, Magistrates' Courts, and in such other courts as the General Assembly may from time to time establish." No one can fairly read this section of the

constitution and maintain that the courts therein named are the only ones which the legislature was empowered to establish. A reasonable construction of this language, is that the power of the legislature extends not merely to the establishment of other courts similar to those enumerated, but that it also includes the power to establish courts of a grade and character different from those expressly set forth. It is a cardinal principle in the construction of constitutions that the language is to be interpreted in its plain and natural sense as understood by the people who adopted it. So interpreted the power to create a court such as that provided for in the act before us, is ample. It was under the power given by this section, that the legislature estabished the Superior Court. It would be late in the day to now challenge the existence of this power, sixteen years after its first exercise in the creation of the Superior Court. The same power is adequate to establish county courts, and prescribe their jurisdiction. Having the power, the question then is, was it properly exercised in this case? The act establishes a court for Allegheny County, and for that reason it is urged that the legislation is local and special, and violates section 7 of article III of the constitution, which forbids local or special legislation; and it is also contended that it offends the provisions of section 26 of article V, which requires that all laws relating to courts shall be general and of uniform operation, and prohibits the legislature from creating other courts to exercise the powers vested by the constitution in the judges of the courts of common pleas. The objection that the legislation is local and special would be unanswerable, were it not for the fact that the constitution itself has made a classification with reference to the creation, regulation and powers of the courts, in which the County of Allegheny is treated as a distinct division, and the County of Philadelphia as another, and in each of which counties the courts as to their needs and require-

ments are distinguished from the remaining counties in the state.

The principle of constitutional classification, and particularly the classification of counties, has been clearly recognized in a number of our cases. Thus in Morrison v. Bachert, 112 Pa. 322, Mr. Justice Paxson said (p. 330) : "So far as the compensation of county officers is concerned, the constitution has classified the counties of the state." In Reid v. Smoulter, 128 Pa. 324, Mr. Justice Clark said (p. 337) : "We are of opinion that the Act of April 13, 1887, P. L. 22, already referred to, is not in conflict with the constitution, because special or local in its operation. The constitution recognizes a class of counties, in each of which it is the duty of the legislature to establish a separate Orphans' Court, and the Act plainly applies to all the counties of this class." In Rymer v. Luzerne County, 142 Pa. 108, it was said, Per Curiam (p. 113) that the act of March 31, 1876 P. L. 13, there under consideration, "is neither a local nor a special law, for the reason that it applies to all counties of a certain class, and that class created by the constitution itself." In Wheeler v. Philadelphia, 77 Pa. 338 answering the suggestion that a classification was bad which included only one member of the class, it was said (p. 350) : "Classification does not depend upon numbers. The first man, Adam, was as distinctly a class, when the breath of life was breathed into him, as at any subsequent period. The word is used not to designate numbers, but a rank or order of persons or things." Therefore, if the need arises for it, a classification which includes only one city or one county may be valid, if the conditions warrant it, and the constitution authorizes it.

The necessity for classification of the counties of the state, with respect to the courts, is clearly recognized in the constitution. Thus, speaking with reference to the state at large, in article V, section 4, it is provided: ·

"Until otherwise directed by law, the courts of common pleas shall continue as at present established, except as herein changed; not more than four counties shall at any time be included in one judicial district organized for said courts." And in the next section it is provided that whenever a county shall contain 40,000 inhabitants, it shall constitute a separate judicial district with one judge; the legislature to provide for additional judges as the business of the district may require. Counties of less population shall be formed into single districts, or if necessary, may be attached to contiguous districts as the legislature may provide, subject of course to the limitation in section 4. By the same section the office of associate judge is abolished in counties forming separate districts. Section 9 directs that the judges of the courts of common pleas, learned in the law, shall be judges of the courts of oyer and terminer, quarter sessions of the peace, and general jail delivery, and of the orphans' court. Section 22 requires that, in every county wherein the population shall exceed 150,000 the legislature shall establish a separate orphans' court, and permits the establishment of such a court in any other county. These provisions apply to the state as a whole, with few exceptions.

But in section 8 the courts in the County of Philadelphia and in the County of Allegheny are treated as in separate and distinct classes. It is provided that these courts shall from time to time in turn detail one or more of their judges to hold the courts of oyer and terminer and the courts of quarter sessions of the peace, in such manner as may be directed by law. Again, by section 6, the jurisdiction and powers of the district courts in each county were abolished, and courts of common pleas substituted therefor. In the same section the separation of each of these counties into a distinct class, as to which the enactment of legislation appropriate for one was not thought suitable

for the other, appears in the creation of four courts of common pleas for Philadelphia county, as against two in Allegheny county; and the line of separation and distinction between the two counties is further broadened by the requirement that in Philadelphia all suits shall be instituted in said courts of common pleas without designating the number of said court, the several courts to distribute and apportion the business among them in such manner as shall be provided for by rules of court. Upon the other hand, in Allegheny county no designation of the number of the court is required in bringing suit; and each court is given exclusive jurisdiction of all proceedings at law and in equity commenced therein. The fact of a distinct classification is further shown in section 7, which provides that in Philadelphia the prothonotary of all of said courts is to be appointed by the judges, and is to hold office for three years, subject to removal by a majority of the judges. In Allegheny county, the Prothonotary is not appointed by the judges and is therefore an officer to be elected by the people. Again, in section 12 it is provided that in Philadelphia there shall be established for each 30,000 inhabitants, one court, not of record, of police and civil causes, with jurisdiction not exceeding one hundred dollars; such courts to be held by magistrates whose term of office shall be five years; and the office of alderman is abolished. No such court is provided for Allegheny county, or for any of the other counties.

It will be noted that these sections of the constitution not only indicate a classification of counties, with reference to the courts, but many of the provisions require special legislation to carry them into effect, or such changes "as shall be provided by law," to quote the phrase often used in various sections of the constitution. This makes clear the intention that the legislature should, as occasion arose, provide for further needs within and along the lines of classification indicated.

These extracts above noted, from the article of the constitution which deals with the judicial power of the commonwealth, seem to demonstrate the fact that by the terms of the constitution, a classification is made as to the creation of the courts, and the distribution of their powers, by which the county of Philadelphia is to be treated as one division, the county of Allegheny as another, and the remainder of the state as another, with certain distinctions based upon the population and other conditions of the various counties. Obviously, the constitution classified the county of Philadelphia, as being distinct from other parts of the state, for the very purpose of permitting legislation affecting the courts of Philadelphia county, without including other parts of the commonwealth where the conditions and needs of the people are different. The same is true as to Allegheny county. Each of these counties was given the right to stand in a class by itself, in so far as legislation affecting its courts is concerned. The question as to whether or not Philadelphia constitutes a judicial class, separate and distinct from the state generally, was before the Superior Court, in Com. v. Bell, 4 Pa. Super. Ct. 187. The question there was as to the power of the court of quarter sessions of Lawrence county to extend its term for an additional week. It was claimed that the power was given by the act of June 10, 1881, P. L. 113, which contained a proviso "that the provisions of this act shall not apply to cities of the first class." The appellant contended that this proviso rendered the act special legislation and that it was therefore unconstitutional. Reeder, J., said (p. 193): "The act is also clearly constitutional. The claim that the proviso excepting cities of the first class from its application renders the entire act unconstitutional because it is special legislation, is absolutely without merit. It is unnecessary for us to elaborate our opinion upon this question when the constitution itself makes a special and distinct class of the courts

of cities of the first class." Counsel for appellant in this case, is mistaken in saying that what was said in the case just cited as to the constitutionality of the act of 1881 was obiter dictum. The constitutional question was directly raised, and was passed upon by the Superior Court. True, that court considered the question to be so plain as to require no elaboration. See also Wilkes-Barre v. Meyers, 113 Pa. 395, where an act excepting from its provisions the city of Philadelphia (coextensive with the county of Philadelphia) was held not to be local because the constitution itself made the exception to the requirement that all laws should be general. "It must be general except as otherwise provided in the constitution," was the statement; and Philadelphia was recognized as being classed by itself. The legislature is entirely warranted in following the constitutional classification. Speaking of its power in this respect, this court, in Wheeler v. Philadelphia, 77 Pa. 338, said (p. 349): "But the power existed at the time of the adoption of the constitution; it had been exercised by the legislature from the foundation of the government; it was incident to legislation, and its exercise was necessary to the promotion of the public welfare."

One new court of common pleas has been established in Philadelphia county, and two in Allegheny County since the adoption of the constitution. These courts were created by the legislature, and the constitutionality of the acts has not been questioned, although they specifically named the particular county in which the courts were created. The present act establishing the new county court for Allegheny county, can no more be said to be local or special than were the acts which created new courts of common pleas in these two counties. Such legislation, which otherwise would undoubtedly be regarded as local, is saved because the constitution does make this classification, and the legislature as well as the courts must recognize it. Where

the classification is created by the legislature, it may be necessary to inquire whether the distinctions in the subjects classified are real and proper, and are not created for the purpose of evading the constitution. But in the present case, the classification is that which appears in the constitution itself; and where it speaks, there can be no question. Holding, as we do, that the act before us deals with Allegheny county as specially classified by the constitution, the legislation cannot be regarded as local or special. This disposes of the principal contention, upon the part of appellant.

As to the provision of section 26, article V, that all laws relating to courts shall be general and of uniform operation, it is evident that this requirement is fairly met when such laws are general and of uniform operation as applied to a particular class or grade of courts. This is consistent with the further requirement in the next clause, that "the organization, jurisdiction and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect of the processes and judgments of such courts, shall be uniform." It is clear that uniformity within the respective classes or grades of courts is what the constitution requires; otherwise, the end and aim of classification would be defeated.

The act under consideration provides for a new court of a different class or grade from any heretofore created. So long as there is but one court of this grade, the law regulating it is uniform in the constitutional sense. It is composed of one bench of judges whose number depends upon population. In the event that other courts of the same grade should be established, then all laws relating to that grade must be of uniform application.

Another point pressed in the argument for appellant is that the creation of this new county court is prohibited by the last clause of section 26, which prevents the general assembly from creating other courts, to ex-

ercise the powers vested by the constitution "in the judges of the courts of common pleas and orphans' courts." It is contended that this means the powers vested in the courts, and not in the judges of the courts. Such a construction nullifies the plain inference to be drawn from the language of section 4, which is that, when directed by law, changes may be made in the common pleas. It is also in opposition to the provisions of section 1 of article V, which expressly authorizes the legislature to establish from time to time other courts than those already created. As the court below in its opinion well says: "It would seem, therefore, that the true construction of this clause of section 26 is to be obained by taking its language literally, and holding that it applies only to the powers vested in the judges of the courts of common pleas; as, for example, the power of sitting in the oyer and terminer; but does not directly vest any powers in the courts of common pleas which may not be taken away by law." Unquestionably certain powers were conferred upon the judges as such, and not upon the courts in which they sat. In an earlier clause in section 26, there is a reference to the powers of the courts, and the contrast between the wording of this phrase and that which refers to the powers vested in the judges is significant and adds force to the argument that the constitution means precisely what it says when it prohibits interference with the powers vested in the judges, rather than with the powers of the courts. We are not at liberty to adopt a construction which disregards the exact words of this section, particularly when it would create an inconsistency with other sections of the constitution. We are bound to sustain a construction which will give effect to all provisions, if possible. The act of assembly before us creating the new county court does not divest the judges of the courts of common pleas or the orphans' court of any of their powers. Further it should be noted that the

act does not infringe in any way upon the powers or jurisdiction of the courts of common pleas or of the orphans' court.  Section 6 of the new act deals with the question of jurisdiction.  Paragraph (a) confers jurisdiction in civil actions where the amount involved is limited; but it is only concurrent and not exclusive jurisdiction.  This is clearly shown by paragraph (d) which provides that only the jurisdiction conferred in clauses (b) and (c) shall be exclusive.  This means that the jurisdiction in civil cases conferred by clause (a) is not exclusive but concurrent within the limitations fixed.  In other words, any suitor may still bring his action in the common pleas if he so prefers, but may bring it in the county court if he chooses.  If the suit be brought in the county court it may be appealed to the common pleas.  In such event the county court becomes the gateway to the common pleas; but, in either event, no matter whether the suit be originally brought in the common pleas or in the county court, the jurisdiction and powers of the common pleas are not abridged.  The purpose and result can only be to relieve the common pleas of a part at least of the mass of comparatively petty litigation which, in this county, has almost blocked the wheels of justice.  The dates upon the records of appealed cases that come before us, oftentimes speak eloquently of the need of such relief as the act in question affords.  It was a condition and not a theory that confronted the legislature, and the need of relief was imperative.  The method was a legislative question, to be exercised under the constitutional power of the general assembly to establish other courts.  It might have created other courts of common pleas, which would have deprived the present courts of a portion of their business, and shared with them their powers.  Instead of so doing, the general assembly chose a plan, apparently simple, effective and speedy, by which to weed out in the preliminary stages, much of the litigation which may, under the terms of

the act, if desired by the parties, eventually be taken into the courts of common pleas.

We have no doubt as to the power of the legislature to create such a court, and to prescribe its method of procedure. It would unduly prolong this discussion to take up in detail every feature prescribed. We can refer only to some of the principal points against which criticism is directed. Counsel for appellant suggests that the language in section 6 (a) which is, "In all civil actions wherein only a money judgment is sought to be recovered, and in all actions of replevin in which the sum demanded or the value of the property replevined does not exceed six hundred dollars," gives jurisdiction in all civil actions without limit as to amount. But this construction is not justified. Obviously, in punctuating, a comma was omitted after the word replevin; but this does not really render the meaning obscure. It is apparent that the qualifying phrase, "in which the sum demanded" refers to the actions brought to recover a money judgment, just as the words "value of the property replevined" appropriately refer to actions of replevin. The limitation of six hundred dollars applies to all the actions to which reference is made. This view is consistent with, and confirmed by the language of section 10, which requires defendant to set off a counter claim to an amount not exceeding six hundred dollars, or be barred. The suggestion that the law is not uniform, because the procedure provided for the county court differs from that which obtains in the common pleas, is without merit. It was intended that it should be more simple, and very properly so; that is one of the obvious advantages of the legislation. The practice as prescribed in clause c, section 7, providing that plaintiff's statement of claim, not denied, shall be taken as true, is very similar to that prescribed by the practice act of May 25, 1887, P. L. 271, and by rule 8 of the courts of common pleas of Allegheny county. The

validity and propriety of such a rule cannot be seriously questioned. It serves to bring the parties directly to the issue. Objection is also made to the provision for the service of writs of summons. But surely, if the legislature can create the court, it can provide for the service of its writs.

In section 8, provision is made for a jury trial on request of either party, and the payment of the jury fee in advance. It is suggested that this provision is an abridgement of the constitutional right of trial by jury. But under the long settled practice in this state, under the act of March 29, 1805, Sec. 13, 4 Sm. L. 237, a jury fee must be paid before judgment can be entered on a verdict. A verdict is of little value unless judgment be entered upon it, and it is but a slight step further to require payment of the jury fee before the trial, instead of before judgment. It might as well be argued that a plaintiff was denied the right to a jury trial because compelled to pay for the issuing and service of a summons, before such trial can be had. In Capital Traction Co. v. Hof, 174 U. S. 1, it is held that a requirement that a jury fee shall be paid, is not a denial or abridgement of the right of trial by jury. To the same effect is Bank of Columbia v. Okely, 17 U. S. 235. As illustrating the same principle, it may be noted that in McDonald v. Schell, 6 S. & R. 240, it was held that the act requiring the payment of costs before taking an appeal from an award of arbitrators, did not affect the right of trial by jury. See also Warren v. Com., 37 Pa. 45, where it is said (p. 52) that a provision requiring bond for appeal does not offend against the constitution.

The provisions as to set off contained in section 10 seem to be taken almost verbatim from the act of March 20, 1810, Sec. 7, 5 Sm. L. 161, which relates to setting off counter claims in suits before justices of the peace. The fact that a plaintiff appealing is required to enter security for costs only, though judgment for

a set-off may be given against him, while a defendant must give security for debt, interest and costs, may, from the standpoint of the constitution, be a defect in the act; but, if so, it can be cured by amendment. But as to that, we do not now decide. It is not essential to the main purpose of the legislation. If deemed of sufficient importance, the question can be raised and decided after fuller argument upon the precise point.

The liens authorized under section 11 are acquired by entering judgments in the common pleas, practically in the same manner as they have been entered for over a century on transcripts from justices of the peace. Whether the transcript comes from one subordinate court or another, can make little or no difference as to the character of the lien. If the legislature has the power to create the court, it must also have the power to give force and effect to its judgments. The method here provided is not new, but is merely the adaptation of one which has existed in Pennsylvania since the act of March 20, 1810. The advantage of having all judgments which are a lien on real estate in the county, entered in one set of indexes is apparent. The provision of section 11 that the lien shall be removed on the "perfection of the appeal" or the granting of a certiorari operating as a supersedeas, is substantially like that of section 1 of the act of June 24, 1885, P. L. 160, giving judgments entered on transcripts from magistrates courts, the force and effect of judgments originally obtained in the common pleas, where no appeal or certiorari has been taken. As to the precise effect of this latter provision, we do not now deem it necessary to decide, preferring to leave it open for further consideration, if the need should arise. This feature, together with several other matters of detail to which reference has been made in the argument, is not essentially involved in the main purpose of the statute. Any such questions are of minor importance, and if they arise in the future course of busi-

ness in the court, they can be more fully presented and argued in detail, and the precise questions involved can be more fully considered than at the present time.

That one who asks to have a law declared unconstituitonal takes upon himself the burden of proving beyond all doubt that it is so, has been so often declared that the principle has become axiomatic. In Sharpless v. Mayor of Philada., 21 Pa. 147, Mr. Justice Black said (p. 164): "There is another rule which must govern us in cases like this; namely, that we can declare an act of assembly void, only when it violates the constitution clearly, palpably, plainly; and in such manner as to leave no doubt or hesitation on our minds. This principle is asserted by judges of every grade, both in the federal and in the state courts." And again in Erie and North-East R. R. Co. v. Casey, 26 Pa. 287, the same Justice said (p. 300): "The right of the judiciary to declare a statute void, and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibilities so grave. that it is never to be exercised except in very clear cases; one department of the government is bound to presume that another has acted rightly. The party who wishes us to pronounce a law unconstitutional, takes upon himself the burden of proving, beyond all doubt, that it is so." In Hilbish v. Catherman, 64 Pa. 154, Mr. Justice Agnew said (p. 159): "We cannot declare this act unconstitutional unless we can say, in the language of Judge Tilghman, that 'its violation of the constitution is so manifest as to leave no reasonable doubt:' Com. v. Smith, 4 Binn. 117." And Chief Justice Sharswood said, in Com. v. Butler, 99 Pa. 535 (540): "To justify a court in pronouncing an act of the legislature unconstitutional and void, either in whole or in part, it must be able to vouch some exception or prohibition clearly expressed or necessarily implied. To doubt is to be resolved in favor of the constitutionality of the act."

It may be conceded that some of the clauses of the constitution here involved, are obscure, and that some of the questions here presented are not free from difficulty; but that is not sufficient to justify striking down the statute. We may rest the consideration of this case upon the conviction that it has not been plainly shown that any vital feature of the statute under consideration offends against any specific provision, or any necessarily implied prohibition, of the constitution; and therefore the act must be sustained. The assignment of error is overruled and the judgment is affirmed.

MR. JUSTICE MOSCHZISKER, dissenting:

I fully realize the conditions in Allegheny County and the general demand for the relief sought to be afforded by the statute under consideration, and for that reason I have studied this case with every desire to sustain the Act, if possible, but it seems to me to be clearly in conflict with the organic law of the State.

While Philadelphia and Allegheny counties are distinguished from the rest of the Commonwealth in certain of the constitutional provisions pertaining to the judiciary which relate exclusively to them, yet such classification—if it can be so designated—is only for the specific purposes defined therein, and not for court purposes generally. The courts of those two great counties need the protection of the appropriate general provisions contained in the judiciary article as much as do the courts of the other counties of the State; the records of the development of this part of the constitution show that its framers intended such protection; and from the article as a whole one cannot but believe that the people must have so proposed when they adopted it.

To my mind section 26, Article V, expressly and unequivocally forbids the creation of other courts to ex-

ercise the powers vested in the common pleas; for the powers of the courts are administered by the judges, and when the constitution refers to the powers vested in the judges, it plainly means to include all the powers given to the courts. In this connection it is interesting to note from the records of the constitutional convention that the prohibition against the creation of other courts to exercise the powers vested in the common pleas, was originally part of the particular section in reference to the courts of Philadelphia and Allegheny Counties and was removed therefrom and placed in section 26 so that the restriction might be general as to all common pleas courts; and further that the word "courts" was changed to "judges of the courts," evidently to meet the expressed objection that the former was not sufficiently comprehensive to take in the criminal jurisdiction of such judges (See Debates, Vol. 6, p. 256, p. 507-9 and pp. 544-5). To refer to the "judges" as comprehending the "court" is a common method of expression which was intentionally employed by the draftsmen of the constitution (Vol. 6, pp. 544-5). It is quite certain that the expression would be thus accepted by the average man, and that the language used was so understood by the electors who finally passed upon and accepted the constitution cannot reasonably be doubted.

In my opinion the legislative authority to make changes by law in the jurisdiction of the present courts, and the power to create other courts, are always subject to the constitutional limitations contained in section 26. This Act not only gives to the court which it seeks to create many of the powers vested by the constitution in the common pleas, but it further violates the prohibitions of the section in question when it takes from the Quarter Sessions of Allegheny County and transfers to the new court all jurisdiction in non-support and certain other cases; thus in effect depriving the "judges of the courts of com-

mon pleas" sitting in the criminal courts of certain powers indirectly but nevertheless undeniably, vested by the constitution in such Judges as ex-officio judges of the latter courts (Sec. 9, Art. V.), and making the jurisdiction and powers of the Quarter Sessions of that county different from those of all other courts of the same class or grade in the State. For these reasons and for others which might be stated I am obliged to dissent.

Mr. Justice MESTREZAT and Mr. Justice STEWART join in the dissent.