## Commonwealth ex rel. v. Wehr

*Groman & Rapoport*, for relator; *Horace W. Schantz*, for respondent.

RENO, P. J., February 29, 1932.—By the Act of June 23, 1931, P. L. 931, the General Assembly established a separate orphans' court for Lehigh County, consisting of one judge, who was to be elected "and duly commissioned to hold office from the first Monday of January next succeeding such election." Hon. Ethan Allen Gearhart was elected and commissioned. He qualified and assumed the duties of his office on January 4, 1932, when he formally opened and organized a separate orphans' court. Two parties claim the office of clerk of the court. Henry P. Wehr, the respondent herein, was elected clerk of the orphans' court in November, 1929, was duly commissioned and qualified, and entered upon the discharge of his duties on the first Monday of January, 1930. He was elected for the period of four years and his claim to the office is founded upon the election for a four-year term which has not expired. The other claimant is Asa H. Neimeyer, who was elected register of wills at the election held in November, 1931, and who has been duly commissioned and qualified. He entered office on January 4, 1932, and he claims the office of clerk of the orphans' court under the Constitution, Art. v, Sec. 22, which provides that "in any county in which a

separate orphans' court shall be established, the register of wills shall be clerk of such court. . . ."

The Commonwealth, at the relation of the district attorney, instituted this quo warranto proceeding to test Wehr's title to the office. To the district attorney's suggestion Wehr filed an answer and, subsequently, a supplemental answer. The relator filed a general demurrer to the respondent's answer, and, by agreement of counsel at bar, the demurrer applies as well to the supplemental answer.

Thus, the contest is between the respondent whose title to the office rests upon an election for a four-year term commencing January, 1930, prior to the establishment of the separate orphans' court, and the register of wills, who stands upon the constitutional provision. The case of French v. Com. ex rel. Zimmerman, 78 Pa. 339, furnishes the complete solution of the problem. There, immediately after the adoption of the Constitution of 1874, precisely the same controversy arose, and the Supreme Court, reversing the court below, held:

"The former clerk of the Orphans' Court does not become clerk of the new court, but the register of wills becomes its clerk. It is not the former clerk of the Orphans' Court that the constitution declares shall be subject to the direction of the new court; but it is the new clerk, the register of wills. It is this new clerk, and not the old one, who is authorized to appoint assistant clerks. There is nothing in the section, either expressed or implied, indicating that the clerk of the former Orphans' Court should become clerk of the new Orphans' Court for a single hour. The manifest design was to establish a new tribunal for the administration of that branch of the law and provide for its new officials. The same section that takes from the judges of the Court of Common Pleas all Orphans' Court jurisdiction, and from a register of wills all power to sit in a Register's Court, just as clearly withholds from the former clerk of an Orphans' Court the newly-created powers and duties appertaining to a clerk of the new court."

It is vigorously contended that the French case must be understood as establishing a rule applicable only to those clerks of the orphans' courts who were in office when the Constitution of 1874 became effective. It is true that consideration was given to the twenty-sixth section of the schedule to the Constitution and it was discovered that, since it was "otherwise provided in this Constitution," the clerk "in office . . . at the time of the adoption of . . . [the] constitution" did not continue in office. But the case did not turn upon the provision of the schedule; it was decided upon an examination of article five, section twenty-two; in other words, it was held that the provisions in the schedule did not prevent the operation of the explicit language of article five, section twenty-two. The clerk's term ended, not merely because the schedule failed to save it from expiration, but because article five, section twenty-two clearly designated the officer who was to be the clerk of the newly-established separate orphans' court. It follows that the conclusion there announced must govern this case.

Even if we were free to examine the question, we should, upon slightly different premises, reach the conclusion announced by the French case. The respondent's election did not vest in him an absolute and unqualified tenure for four years. Apart from the circumstance that the duration of his term could be cut down by the adoption of a new constitution (cf. French v. Com. ex rel. Zimmerman, supra), he could be expelled from the office by impeachment (Constitution, Art. VI, Sec. 3), by removal upon conviction of a crime (Art. VI, Sec. 4), or by the Governor on the address of the Senate (Art. VI, Sec. 4), or for engaging or participating in a duel (Art. XII, Sec. 3). That is, he holds his office upon

the condition that he behaves himself well (Art. VI, Sec. 4). His tenure is subject to a conditional limitation, or, more properly, a collateral limitation, by virtue of which it is cut down by the happening of an event nominated in the instrument, the Constitution, under which he holds the tenure. It must be presumed that, since the conditional or collateral limitation appears in the same instrument which granted the tenure, he had knowledge of the limitation, although this is not material. The provision in article five, section twenty-two, provides an additional collateral condition. It prescribes another event which, when it happens, terminates the tenure. It provides that when a separate orphans' court shall be created the register shall be its clerk. As in the physical world, two bodies cannot occupy the same space at the same time, so in the political world two officers cannot hold the same office at the same time. It follows that when, by the mandate of the Constitution, a separate orphans' court is established, the tenure of the clerk ends. In short, that provision of the Constitution (Art. XIV, Sec. 2, as amended November 2, 1909) which grants a tenure of four years is, so far as the clerk of the orphans' court is concerned, subject to the collateral limitation provided by article five, section twenty-two, and when a separate orphans' court comes into existence, the tenure of the clerk is, by the happening of that event, cut down.

This conclusion rests upon a choice between two apparently conflicting provisions of the Constitution. The provision fixing the clerk's term at four years is, under our construction, defeated because of its conflict with the provision relating to the orphans' court. This circumstance calls for a consideration of the problem presented by conflicting constitutional provisions and "it is well established that, where a conflict exists between a specific constitutional provision, which is unquestionably applicable to a particular case, and certain general provisions, which, were it not for such conflict, might apply, the specific provision will prevail:" Philadelphia v. Com., 270 Pa. 353, 358. And see Buckley v. Holmes et al., 259 Pa. 176, 188; Com. ex rel. v. Mathues, 210 Pa. 372, 398, 415; Com. v. Emmers, 221 Pa. 298, 312. In the case at bar, the specific provision that the register of wills shall be the clerk of the orphans' court conflicts with the general provision fixing the term of county offices at four years, but, under the cases, the specific provision must apply.

It is true, as urged by the respondent, that the instant case differs from the French case in that the act creating our orphans' court contains no provision making the register of wills clerk of the orphans' court. In the absence of applicable legislation, it might readily be held that the portion of article five, section twenty-two, providing that the register of wills shall be the clerk of the orphans' court, is self-executing. We are not pressed to that conclusion; the Orphans' Court Act of June 7, 1917, P. L. 363, Sec. 8, explicitly provides that "the register of wills of each county, in which a separate orphans' court is now or hereafter shall be established, shall be clerk of such court. . . ."

The final contention upon this phase of the case is that our clerk of the orphans' court was created by a local act; that local acts are not repealed by the Constitution; and that, as a consequence, the provisions of article five, section twenty-two, do not supplant the local act. Even so, it would not follow that the respondent is entitled to his office; for, having experienced no difficulty in resolving a conflict between constitutional provisions, we should encounter none in a contest between an unrepealed local statute and a constitutional mandate. The contention is doomed because respondent fails to discern that only those laws which are not inconsistent with the Constitution (Schedule, Sec. 2) are saved from repeal. To the extent that a local act is inconsistent with the Constitution, it must yield. But the complete answer to the contention is dis-

covered in the circumstance that it is founded upon a totally false premise. The office of clerk of the orphans' court was not created by a local act. The Act of July 2, 1839, P. L. 559, upon which respondent relies, is not, in any sense of the word, a local act. It applies throughout the Commonwealth. It is entitled "An Act to provide for the election of Prothonotaries, Clerks, Recorders and Registers." The first section provides "that the qualified electors of each county in this commonwealth shall, at the next general election, at the times and places of electing representatives, and whenever it becomes necessary for an election, under this act, vote for prothonotaries, clerks of the several courts, recorders of deeds, and registers of wills, for each county, respectively, as follows, namely, . . ." Then follow separate sections for each county of the state, of which the following is typical:

"The qualified electors of the county of Lehigh shall elect one person to fill the office of prothonotary; one person to fill the office of recorder of deeds; one person to fill the offices of clerk of the courts of quarter sessions, oyer and terminer and orphans' court; and one person to fill the office of register of wills." (This section was amended by the Acts of April 14, 1863, P. L. 406, and May 5, 1864, P. L. 850.)

It will be observed that this act did not create the offices it mentions; some of them were created in the very earliest days of the colony, and some soon after the colony was transformed into a state. The office of clerk of the orphans' court was created by the Act of April 14, 1834, P. L. 333, Sec. 56, and, possibly, earlier legislation would reveal its existence if one possessed the necessary time for an exhaustive research. The Act of 1839, supra, was undoubtedly passed to enforce the provision of the Constitution of 1838, the "Great Reform Constitution," which, as every student of our political history knows, deprived the Governor of immense stores of patronage by enlarging the right of the people to choose their local officials. The prime intent of the Act of 1839 was, as a careful reading will convince, to designate how many of the offices of the class mentioned in the title might be held by one person in the respective counties. It has no significance whatever in this case.

The constitutionality of the Act of June 23, 1931, P. L. 931, is challenged upon the ground that it is local and special legislation. Here, as we conceive it, we touch an unexplored realm; as far as our researches have proceeded, this question has never been raised or decided before. The separate orphans' courts in Pennsylvania have been created in two ways. The Act of May 19, 1874, P. L. 206, established separate orphans' courts for Philadelphia, Allegheny and Luzerne Counties, and this legislation was sustained in Reid v. Smoulter, 128 Pa. 324, 337, where it was said: "We are of opinion that the Act of April 13, 1887, P. L. 22 [amending the Act of May 19, 1874, supra], . . . is not in conflict with the constitution, because special or local in its operation. The constitution recognizes a class of counties, in each of which it is the duty of the legislature to establish a separate Orphans' Court, and the act plainly applies to all the counties of this class." Since 1874 separate orphans' courts have invariably been created by an act applicable only to one county: Berks, June 13, 1883, P. L. 97; Schuylkill, March 28, 1895, P. L. 31; Westmoreland, April 11, 1901, P. L. 71; Montgomery, May 2, 1901, P. L. 117; Lancaster, July 11, 1901, P. L. 655; Lackawanna, July 11, 1901, P. L. 657; Fayette, May 25, 1907, P. L. 260; Cambria, June 4, 1919, P. L. 372; Washington, July 8, 1919, P. L. 736; Delaware, April 11, 1921, P. L. 121; Erie, May 24, 1921, P. L. 1075; and Lehigh, June 23, 1931, P. L. 931. The Orphans' Court Act of 1917, P. L. 363, Sec. 1, recognizes the existence of the separate orphans' courts established before 1917. The orphans' courts which have been established since 1917 have not, by amend-

ment or otherwise, been brought within the Orphans' Court Act of 1917. Whether the separate orphans' courts, established since 1874, were created for counties which had attained a population of 150,000 does not appear and is probably immaterial. The point is that, as far as we can discover, the validity of the acts creating separate orphans' courts for one county, above or below 150,000 population, has never been determined.

Nevertheless, the solution is not difficult. To begin with, it is not enough to allege that an act is local and special legislation. It must also appear that it is local and special legislation upon one of the topics mentioned in article three, section seven, of the Constitution. That article provides that "the General Assembly shall not pass any local or special law . . . :" upon or pertaining to twenty-six subjects or topics described in the succeeding clauses. If a challenged act is local and special legislation upon a subject not included in the succeeding clauses, it is valid: Nolan v. Jones, 263 Pa. 124, 130; cf. Seabolt et al. v. Commissioners of Northumberland County, 187 Pa. 318. The respondent has not pointed to any specific clause which is impinged by the act which he has challenged, nor can he. Conceivably, the act might have been assailed upon the ground that it regulates "the affairs of counties," but the argument would have been extremely tenuous. Giving to the clause its widest meaning ("such affairs as affect the people of that county:" Morrison v. Bachert, 112 Pa. 322, 329), it still does not invalidate this act. A court, notwithstanding that it affects the people of a county, is not essentially an affair of the county. A court, although its jurisdiction, that is, its power to declare the law, is territorially limited to the boundaries of a county, is not an arm of the county. Normally, it has neither administrative nor legislative authority in the affairs of the county. The administrative functions conferred upon the court of quarter sessions and, slightly, upon the court of common pleas, are totally withheld from the orphans' court. The judge is chosen by the electors of the county, but this does not render the judge a county officer nor constitute the court a department of the county government. The judge is a state officer, commissioned by the state, paid by the state, and he performs a state function. The courts, certainly courts of record, are organs of the State, the instruments of its sovereignty and the attributes through which the State exercises its supreme function and attains its chief objective, that of establishing and maintaining justice. When, therefore, the legislature establishes a court it does not engage in the regulation of the affairs of a county. Plainly, it is attending to a matter which is an affair of the state.

The only other clause in article three, section seven, upon which an allegation that our act is local or special legislation might conceivably be predicated is the prohibition of such legislation "regulating the practice or jurisdiction of . . . courts . . ." However, the decisions of the appellate courts upon this clause, rendered in the examination of the legislation creating the Municipal Court of Philadelphia and the County Court of Allegheny County, are so conclusive that further discussion is unnecessary. See Phila. & Reading Ry. Co. v. Walton, 248 Pa. 381; Gottschall v. Campbell, 234 Pa. 347; Gerlach v. Moore, 243 Pa. 603; Com. v. Hopkins, 241 Pa. 213; Findley v. Bryans, 58 Pa. Superior Ct. 399.

We have been saying that not all local and special legislation is invalid, that only such as is forbidden by the Constitution is void, and that, if the challenged act could be fairly called local and special, it would, nevertheless, be valid because not within the prohibitory clauses. But we do not rest the decision upon that ground. We hold that the act is not local or special legislation and that it is general legislation, although it applies to only one county of the state. That

principle can be readily demonstrated. Whenever the Constitution clearly authorizes the General Assembly to legislate for a single county, the act is not local or special legislation: Gottschall *v.* Campbell, 234 Pa. 347, 351. Article five, section twenty-two, clearly authorizes the General Assembly to deal with the counties one by one in respect of the establishment of orphans' courts. It has been supposed (cf. Wheeler *v.* Philadelphia, 77 Pa. 338) that article five, section twenty-two, classifies the counties into two classes, and it is argued that, as a consequence, the General Assembly must legislate for all the units included within one of the classes or not at all. That position is not tenable. There is, to be sure, the provision "in every county wherein the population shall exceed one hundred and fifty thousand, the General Assembly shall, and in every other county may, establish a separate orphans' court." Upon first blush it might be supposed that the Constitution has divided the counties into two classes, the first comprising counties containing more than 150,000, and the second consisting of the counties of less population. But this rests upon a mere superficial consideration of the section. Upon closer analysis, it appears that the classification runs deeper. For, as to the first class, there is a constitutional mandate to the General Assembly to establish separate orphans' courts "in every county," and, as to the second class, "every other county," there is conferred a legislative discretion. So that there are comprehended within the section two classifications, one based upon population and the other upon the nature of the power available to the General Assembly. The latter distinctions are more fanciful than real. Since no external force can compel the General Assembly to execute a constitutional mandate, the net practical result is that its discretion extends to every county of the state. Thus, there is not a real classification effected by that section, certainly not in the sense in which we usually employ that term. Generally, things are said to have been classified when they are collected into groups possessing common characters. Doubtless the reverse process also produces classification: Things may be distributed among groups according to common qualities. Whatever process is used, there is a classification whenever there is a recognition of common qualities, and it may well be that this section can be said to classify the counties by recognizing in them the common quality of eligibility to a separate orphans' court. However, this cannot aid us; for, if all the counties are by the Constitution placed in one class or, for that matter, in two classes, valid legislation concerning them must relate and apply to all of the units contained within the class.

However that may be, the construction of the section is completed only when we have examined the meaning which the word "every" carries into the section. In "every county" having more than 150,000 people the General Assembly is commanded to establish a separate orphans' court, and in "every other county" it may establish a separate orphans' court. For the reasons which we have already stated, the legislative discretion actually extends to "every county." What then shall we say of this word "every?" Does it mean that the General Assembly can establish a separate orphans' court for one county only if it establishes a like court for every county? Or does it contemplate individual, separate legislation for each unit whenever the legislature determines to exercise its discretion? It must mean the latter; otherwise the General Assembly cannot exercise the discretion vested in it by the word "may." That is, unless "every" means "each," considered as a separate, distinct, individual unit, for which the General Assembly may legislate one by one, its discretion is a vain and useless power. The word "every" means precisely that. The word "every" clearly contemplates individual, separate legislation for each county considered as a separate unit. "Every" means "each, considered indefinitely as a unitary

part of an aggregate; all, of a collective or aggregate, taken one by one; any, as representing all of which the same thing is predicated:" Century Dictionary. It means, "each, individual or part, without exception, of a class or group, whether definite or indefinite in number:" Webster's Dictionary. It means, "all, taken one by one:" March's Thesaurus. (And see 21 C. J. 1260.) As a consequence, arising out of the use of the word "every," we find that, so far as the establishment of separate orphans' courts are concerned, the Constitution permits legislation for the counties separately, individually, one by one.

The Constitution itself recognizes each county as a separate unit for the purpose of legislation affecting courts and the judiciary. Thus, there is article five, section five, "Whenever a county shall contain forty thousand inhabitants it shall constitute a separate judicial district," and article five, section twelve, "in Philadelphia there shall be established, for each thirty thousand inhabitants, one court, not of record, of police and civil causes." To this may be added the provision in article five, section five, authorizing additional law judges in the several judicial districts "as the business of the said districts may require." Likewise, the provision in the same section authorizing the legislature to attach counties "to contiguous districts" evidences legislative authority to deal with the counties one by one. So, also, the provisions of article five, section eight, authorizing the Philadelphia and Allegheny courts to detail one judge to hold the criminal courts, places those counties in a separate class. Article five, section six, as it appeared originally or as amended, clearly places Philadelphia and Allegheny in separate classes, and because of this classification, the General Assembly was permitted to deal with them separately in the creation of the municipal and county courts to which reference has already been made.

The irresistible conclusion is that legislation establishing courts and creating judges is not, even though it deals with only one county or one judicial district, special or local legislation. It is general legislation, expressly authorized by the Constitution and depends for its validity upon the explicit recognition by the Constitution of counties and districts as separate units for the purpose of legislation respecting the judicial arm of the government. Having reached this conclusion, it is not necessary to discuss that provision of the Constitution (article three, section eight) which provides that "no local or special bill shall be passed unless notice of the intention to apply therefor shall have been published in the locality. . . ."

Finally, respondent contends that since the legislature enacted a judicial apportionment law in 1931 (Act of May 21, 1931, P. L. 167), its power to legislate upon that subject was exhausted and that it became impotent to create a new court until after the decennial census of 1940. It is true that the Constitution requires that apportionment bills shall be passed immediately after each decennial census, and, it has been held, that once the legislature has exercised that power it may not legislate upon the subject during the ensuing decade: Com. ex rel. v. Heck, 251 Pa. 39; Noecker v. Woods, 259 Pa. 160; Com. ex rel. v. Harding et al., 87 Pa. 343. However, it is not the function of an apportionment measure to establish courts; it merely divides the state into judicial districts and designates the districts to which each county shall belong and provides for the election of judges whose offices were created by anterior legislation. Apportionment presupposes the existence of counties, courts and judges. The counties, courts and judges are brought into existence by other legislation. Nothing is brought into existence by apportionment legislation except the judicial districts. In no apportionment bill which we have examined has an attempt been made to create courts or judges. Such a provision would, we believe, offend that provision of the Constitution (Art. III, Sec. 3) which provides that "no bill

. . . shall be passed containing more than one subject. . . ." However that may be, it is clear that the enactment of an apportionment bill does not prevent the same legislature or any succeeding legislature from establishing new courts, new counties or additional judges.

No extended consideration need be given to the contention based upon article three, section thirteen, which provides: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." The purpose of this action is to try respondent's title to office. His right to the salary or emoluments is not in question and cannot be raised or adjudicated in this suit. If it is supposed that his right to the salary subsists, although he lacks title to the office, that contention must be raised in another proceeding. To the extent that the general provision supplied by this section is conceived to be in conflict with the specific provisions of article five, section twenty-two, it must, for the reasons heretofore stated, yield to the latter.

Now, February 29, 1932, the relator's demurrer is sustained; judgment thereon is hereby entered for the relator and against the respondent; the said Henry P. Wehr is found and adjudged guilty of usurping, intruding into, and unlawfully holding and exercising the office of clerk of the Orphans' Court of the County of Lehigh; wherefore, the said Henry P. Wehr is hereby ousted from said office and from the franchises, privileges and powers thereof. The costs hereof shall be paid by the said respondent.

From Edwin L. Kohler, Allentown, Pa.