Dickerson *v.* Hudson, Appellant.

416

Argued December 11, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Charles Jay Bogdanoff*, with him *Albert C. Gekoski*, for appellant.

*Albert M. Hankin*, with him *Meyer, Lasch, Hankin & Poul*, for appellees.

OPINION BY SPAULDING, J., March 27, 1973:

Appellees brought this suit in trespass for damages sustained in an automobile accident which occurred on July 6, 1970. Appellant, who was the driver of one of the vehicles, was substituted as defendant. He subsequently died, but, pursuant to an appropriate stipulation, the case proceeded without the appointment of a personal representative. In accordance with the Act

providing for compulsory arbitration[1] as implemented by the Philadelphia County Arbitration Rules, hearing was held before a panel of three arbitrators on April 10, 1972, resulting in the following award by the panel:

"Judgment in favor of the plaintiff Carolyn Dickerson and against the defendant Cohen Hudson in the amount of Twenty Five Hundred Dollars ($2,500.00).

"Judgment in favor of the plaintiff Raymond Dickerson and against the defendant Cohen Hudson in the amount of Five hundred dollars ($500.00).

"Judgment in favor of the plaintiff Donald Dickerson and against the defendant Cohen Hudson in the amount of One hundred twenty dollars and seventy-nine cents ($120.79)." (Report and Award of Arbitrators).

Appellant's counsel filed and perfected an appeal from the award, pursuant to the applicable local rules. Appellees then moved to quash the appeal from arbitration. They alleged that appellant offered no evidence as to liability, proffering evidence solely on the issue of damages, and that the appeal was in violation of the spirit of the arbitration rules in that it was taken capriciously and for delay. Appellant filed an answer

---

[1] Act of June 16, 1836, P. L. 715, §8, Ch. 2, as amended, 5 P.S. §21 et seq. The present jurisdictional amounts are enumerated as follows: "The several courts of common pleas may by rules of court, provide that all cases which are at issue where the amount in controversy shall be ten thousand dollars ($10,000) or less in counties of the first and second class and five thousand dollars ($5,000) or less in all other counties, except those involving title to real estate, shall first be submitted to and heard by a board of three (3) members of the bar within the judicial district and may fix the maximum amount required to be submitted in any amount between two thousand dollars ($2,000) and ten thousand dollars ($10,000), in counties of the first and second class and between two thousand dollars ($2,000) and five thousand dollars ($5,000) in all other counties, exclusive of interest and costs . . . ." Act of June 16, 1836, P. L. 715, as last amended by the Act of July 9, 1971, P. L.       , §1, 5 P.S. §30.

to the petition to quash, contending that extensive cross-examination had tested the evidence as to liability, that appellant regarded the award as excessive, and that the appeal was taken in good faith within the spirit of the rules of arbitration. The court below granted appellee's petition, ordered the appeal quashed and judgment entered on the award of the arbitrators. Appellant now appeals from that order.

The court below held that: "We are of the opinion that this Appeal should be quashed, because it was not taken in good faith. This Court has a right and indeed a duty to review Appeals from arbitration where the issue is raised whether the affidavit of 'no delay' is taken in good faith." The question on appeal is whether this holding was proper or whether, under the facts in the instant case, it improperly violated appellant's constitutional right to trial by jury.

Our consideration of the instant question necessarily begins with the *Smith Case*, 381 Pa. 223, 112 A. 2d 625 (1955), a leading decision of our Supreme Court, which upheld the constitutionality of the Act providing for compulsory arbitration. The Court there, in approving the Act, specifically noted its provision relating to the right to appeal: "Each of the parties was given the right to appeal from the award to the court in which the cause was pending at the time the rule of reference was entered, but such appeal was subject to certain restrictions, . . . ." 381 Pa. at 226. Although the precise holding in *Smith Case* concerned the requirement that costs be paid as a prerequisite to appealing from compulsory arbitration, its reasoning is equally applicable to the other preconditions to appeal enumerated by the Act,[2] *e.g.*, to the requirements that the ap-

---

[2] The Act provides, *inter alia*, that: "Either party may appeal from an award of arbitrators, to the court in which the cause was

peal be taken in good faith and not for the purpose of delay, which we are concerned with here.

The Court in *Smith* initially reviewed the benefits derived from the extension of compulsory arbitration to an enlarged number of cases: "The Act of 1952, greatly enlarging, as it does, the scope of the Act of 1836, is of extreme importance in that it effects a decided innovation in procedure for the adjudication of the class of minor claims to which it relates. It has many obvious advantages. It is clearly designed to meet the situation which prevails in some communities of jury lists being clogged to a point where trials can be had only after long periods of delay,—a condition resulting largely from the modern influx of negligence cases arising from automobile accidents in a great number of which no serious personal injuries are involved. Removing the smaller claims from the lists not only paves the way for the speedier trial of actions involving larger amounts, but, what is of equal or perhaps even greater importance, makes it possible for the immediate disposition of the smaller claims themselves, thus satisfying the need for prompt relief in such cases. By the same token, and working to the same end, the use of the Act will free courts for the speedier performance of other judicial functions. Moreover, there will be a saving to claimants of both time and expense by reason of greater flexibility in fixing the exact day and hour for hearings before the arbitrators as compared with

---

pending at the time the rule or agreement of reference was entered, under the following rules, regulations and restrictions, viz.:

"I. The party appellant, his agent, or attorney, shall make oath or affirmation, that 'it is *not for the purpose of delay* such appeal is entered, but because he firmly *believes injustice has been done.*'

"II. Such party, his agent or attorney, shall pay all costs that may have accrued in such suit or action. . . ." (Emphasis added). Act of June 16, 1836, P. L. 715, §27, as amended, 5 P.S. §71.

the more cumbersome and less adaptable arrangements of court calendars. The operation of the Act has proved eminently successful in all respects, it appearing from statistics gathered . . . that there were 585 cases tried by arbitration [in a 6 month period] . . ., in only 30 or 5% of which appeals were taken to the courts of common pleas. It would seem clear, therefore, that the system of arbitration set up by this statute offers encouraging prospects for the speedier administration of justice in the Commonwealth." 381 Pa. at 229-230.

Having thus approved of the policy behind compulsory arbitration, the Court went on to consider the appellant's contention that the Act's prerequisites for appeal, specifically the payment of costs, deprived him of his right to a jury trial. They rejected this argument, their reasoning being set out in the following lengthy paragraph: "The main charge is that the Act violates Article I, section 6, of the Constitution that 'Trial by jury shall be as heretofore, and the right thereof remain inviolate.' It is true, of course, that this provision of the Constitution would be violated by a statute the effect of which was to compel parties to submit to arbitration against their will or without their assent: Cutler & Hinds v. Richley, 151 Pa. 195, 25 A. 96. Indeed compulsory arbitration conflicts also with the 14th Amendment of the Federal Constitution in that it works a deprivation of property and liberty of contract without due process of law: Chas. Wolff Packing Co. v. Court of Industrial Relations of the State of Kansas, 262 U.S. 522; Dorchy v. State of Kansas, 264 U.S. 286. But this is so only where the statute closes the courts to litigants and makes the decision of the arbitrators the final determination of the rights of the parties; therefore there is no denial of the right of trial by jury if the statute preserves that right to each of the parties by the allowance of an appeal from the decision of the

arbitrators or other tribunal: Emerick v. Harris, 1 Binney 416; Capital Traction Co. v. Hof, 174 U.S. 1; 50 C.J.S. 832, 833, §118. In the Capital Traction Co. case it was said (p. 23): 'It [the Constitution] does not prescribe at what stage of an action a trial by jury must, if demanded, be had; or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it.' The only purpose of the constitutional provision is to secure the right of trial by jury before rights of person or property are *finally* determined. All that is required is that the right of appeal for the purpose of presenting the issue to a jury must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable. As to what amounts to such a forbidden restriction it has been held that the constitutional provision is not violated by a requirement of the payment of costs before the entry of an appeal in order to obtain a jury trial: McDonald v. Schell, 6 S. & R. 239; nor by a requirement of giving bail for the payment of costs accrued and to accrue or for the performance of some other duty: Haines v. Levin, 51 Pa. 412; Commonwealth, for use, v. McCann & Co., 174 Pa. 19, 34 A. 299; nor by a requirement of furnishing security for the prosecution of the appeal and satisfaction of the final judgment: Capital Traction Co. v. Hof, 174 U.S. 1, 23, 43-45; nor by a requirement of the payment of a jury fee in advance of trial: Gottschall v. Campbell, 234 Pa. 347, 361, 83 A. 286, 291. There can be no valid objection, therefore, to the provisions of the Act of 1836, unchanged by the Act of 1952, regarding the payment of the accrued costs and the giving of a recognizance for the payment of the costs to accrue in the appellate proceedings as the condition for the allowance of an ap-

peal from the award of the arbitrators." 381 Pa. at 230-231.

The court below approached the question here by a route similar to that taken in *Smith,* beginning with a review of compulsory arbitration in its jurisdiction: "It is pertinent to review the status of arbitration in the Common Pleas Court of Philadelphia County. This method of disposing of cases was introduced over the objections of many experienced trial lawyers, because they feard [sic] that arbitration would be used as a means of discovery so long as Appeals could be taken without restriction. Presently, the Common Pleas Court disposes of about 1,500 cases per month. The Appeal rate is about 15%. Many of the Appeals are taken by a small group of defendants and attorneys, thus placing about 150 cases a month into the jury trial pool. This is enough to cause the arbitration system to fail in carrying out its objectives, simply because a small group of defendants and attorneys take advantage of the rules to take two opportunities to defeat the adverse side."

The court then went on to decide the instant case, holding that: "This Court is convinced that arbitration can work, but only if Appeals are discouraged in all but the most meritorious cases. No constitutional rights are involved because not everyone has a right to trial by jury. The constitutional provision is that 'trial by jury shall be as heretofore'. . . . Appeal and trial by jury in arbitration cases is perfectly valid so long as a party can have a trial by jury upon meeting certain standards, which are not unreasonable. The arbitration statute requires appellant to file an affidavit with his Appeal. We hold that it is not unreasonable for the appealing party to be obliged to demonstrate that this affidavit of no delay is in fact taken in good faith, and because he believes that an injustice has been

done. We further believe that the Court must be convinced that the alleged injustice must be a substantial one." We disagree with this holding.

Our Court has recently had occasion to reiterate the important policy preference in favor of preserving the right of appeal from compulsory arbitration and the constitutional right to a jury trial. In *Meta v. Yellow Cab Co. of Phila.,* 222 Pa. Superior Ct. 469, 294 A. 2d 898 (1972), *allocatur denied,* January 19, 1973, we held that, while, as decided by *Smith Case,* supra, the requirement that a party pay costs is a reasonable condition to the right of appeal from arbitration, the requirement that record costs be paid "can truly be viewed as a matter *de minimis*" and "is directory rather than mandatory".[3] The requirement that an appellant or his attorney shall make an oath or affirmation that the appeal is not for the purpose of delay and because he firmly believes injustice has been done does not seem to be, however, a *de minimis* matter. But requiring proof of the good faith and bona fides of the affidavit as a prerequisite to appeal is the type of undesirable, burdensome and onerous restriction on the right to trial by jury which is constitutionally infirm under the *Smith Case.*

The lower court's review of the Philadelphia compulsory arbitration program, rather than supporting its decision, shows the fallacy of holding that inquiry into the good faith of an affidavit of no delay is necessary to insure the success of that county's arbitration program. Between the 1955 opinion in the *Smith Case* and the decision in the court below here, the magnitude of the compulsory arbitration program has skyrocketed. Whereas the *Smith* Court cited statistics indicating that 585 cases went to arbitration throughout the Com-

---

[3] 222 Pa. Superior Ct. at 475-476.

monwealth in a 6-month period, the court below noted that, at present, 1,500 cases are arbitrated monthly in Philadelphia County alone. In part, this tremendous increase in the number of cases submitted for arbitration may be attributed to the increase in jurisdictional amount of $10,000. A natural concomitant of the vastly increased number of cases being submitted to, and amounts involved in, compulsory arbitration is an increase in the rate of appeal. Considering these factors, the appeal rate of 15% alluded to by the court below does not seem unreasonably high. Contrary to the conclusion of the court, this indication that 85% of the cases submitted are *finally* disposed of by arbitration points out the success of this program in Philadelphia. Since more money is now at stake in an increased number of cases it is a tribute to all involved, administration, arbitrators, and counsel, that the compulsory arbitration system is effective in producing a disposition from which no appeal is taken in the great majority of cases.

The court below also fails to credit other conditions which must be met in order to appeal from arbitration with their substantial impact in discouraging frivolous appeals. "The requirement that the appellant repay to the county the fees of the arbitrators is obviously designed to serve as a brake or deterrent on the taking of frivolous and wholly unjustified appeals; if there were not such a provision the defeated party would be likely to appeal in nearly all instances and the arbitration proceedings would tend to become a mere nullity and waste of time." *Smith Case*, supra, at 233. "The right to appeal is properly subject to a fixed temporal condition of twenty days. It serves a meaningful purpose to know when a matter has finality. Likewise, a requirement of security as a condition of appeal is a reasonable requirement within the legislative province."

(Citation omitted). *Meta,* supra, at 475. These pre-conditions to appeal, together with counsel costs, witness fees, and other expenses which would be necessary to go to trial have proved sufficient to deter enough appeals so that the arbitration program has been successful, as noted above.

The lower court rested its decision on several additional factors, noting that: "[t]he defendant offers no evidence on liability at the arbitration hearing . . . . The only ground that may, under these circumstances, exist for an Appeal is that the verdict was excessive. In this case the arbitrators awarded property damage in an amount agreed to by the defendant. The award to the husband for medical expenses was minimal; the amount was not disputed. Whether the amount awarded to the wife plaintiff for pain and suffering was excessive cannot be such an error that we must permit the case to be retried and congest the trial list where we are convinced, on reviewing the record, that another tribunal would make a finding in the same general area." These considerations are clearly impermissible findings of fact, invading the province of the jury, by which appellant seeks to be judged, and are improper reasons for quashing this appeal. Such in depth review of an arbitration award, including consideration of a petition to quash the appeal, answer thereto, argument, affidavits on both sides, and other pleadings, all for the purpose of determining whether a sworn affidavit of no delay is taken in good faith, unduly burdens the appellant's constitutional right to trial by jury. Further, a practical look at such a procedure reveals that it would be so time consuming and costly that there would probably be little judicial economy in quashing the few appeals which might prove to be taken in bad faith, rather than assuming the validity of the affidavit and allowing the appeals.

In view of the statutory provision allowing for de novo appeals from compulsory arbitration,[4] the constitutional right to trial by jury, and the general policy that "[s]tatutes giving the right of appeal are liberally construed in furtherance of justice, and an interpretation which will work a forfeiture of that right is not favored",[5] the decision of the court below was error and must be reversed. Appellee argues that our reversal should be limited to granting appellant's right to appeal and to a jury trial solely on the issue of damages, since no defense evidence on the question of liability was presented at the arbitration hearing. We reject this contention. The statute provides that "[a]ll appeals shall be de novo"[6] and the right to trial by jury is in no way limited once the prerequisites to appealing have been met.

The order of the court below is reversed, the appeal from the award of the arbitrators reinstated, and the case remanded for trial.

---

[4] Act of June 16, 1836, P. L. 715, §27, as amended, 5 P. S. §71.

[5] 3 Sutherland, Statutory Construction §6807 (3d ed. 1943).

[6] Act of June 16, 1836, supra, at n.4.