## Sipe *v.* Pennsylvania Railroad Company, Appellant.

*Practice, C. P.—Writ—Statement of claim—Variance—Assumpsit—Trespass—Demurrer—Pleading.*

Where an action has been brought in assumpsit, but the statement of claim sounds in damages for trespass to property by the wrongful act of the defendant, the variance cannot be taken advantage of by demurrer; nor can there be oyer of the writ.

*Arbitration—Compulsory arbitration—Production of testimony—Appeals—Act of June 16, 1836, P. L. 715.*

There is no provision in the compulsory arbitration Act of June 16, 1836, P. L. 715, denying the right of appeal to a party who has failed to appear before the arbitrators; and it seems that such right has not been denied in any subsequent statute.

*Negligence—Waters—Injury to dam—Deposit of debris—Evidence—Burden of proof.*

In an action against a railroad company to recover damages for the alleged negligent deposit of debris in plaintiff's dam, resulting from the construction of bridges in the stream above the dam, the burden of proof is upon the plaintiff to show what portion of the deposit was due to the construction of the bridges, and what portion was caused by floods, or sediment that naturally came down the stream, or was

accumulated in the course of years from sources other than the acts of the defendant. In such a case it is reversible error for the court to fail to distinguish in its charge between the injury resulting from the wrongful acts of the defendant, and that which resulted from natural causes.

Argued Oct. 15, 1907. Appeal, No. 91, Oct. T., 1907, by defendant, from judgment of C. P. Cambria Co., March T., 1903, No. 355, on verdict for plaintiff in case of D. A. Sipe v. Pennsylvania Railroad Company. Before Mitchell, C. J., Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Assumpsit, with statement of claim sounding in damages for trespass to real estate. Before O'Connor, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $13,250. Defendant appealed.

*Errors assigned* were (1) in overruling demurrer to the form of action and statement filed thereunder ; (2) in refusing to strike off appeal, and (29, 31) refusal to affirm points quoted in the opinion of the Supreme Court.

*H. W. Storey*, with him *John W. Kephart*, for appellant.— It is impossible to recover in assumpsit where the damages are quare clausum fregit. A trespass can only be waived where the injury is to personal property : York Trust Co. v. Moul, 15 York Legal Rec. 137 ; Bethlehem Boro. v. Fire Ins. Co., 81 Pa. 445 ; Krause v. R. R. Co., 4 Pa. C. C. Rep. 60 ; Bacon v. Hoover, 17 York, 90 ; Reynolds v. Fenton, 2 Phila. 298 ; Todd v. Ins. Co., 9 Pa. Superior Ct. 381.

One who declines to submit his cause is not entitled to an appeal : Hime v. Meadville, 33 Pa. C. C. Rep. 146.

The court erred in the measure of damages : Horton v. Hall, 39 Legal Int. 62 ; Ehrgood v. Moscow Water Co., 4 Lack. L. News, 151 ; Elder v. Lykens Valley Coal Co., 157 Pa. 490.

*William Davis*, with him *Harvey Roland*, for appellee.— A summons may be issued in trespass, and a statement filed in assumpsit, and vice versa, and the variance is not a good cause of demurrer or plea in abatement. Oyer of the writ is

not demandable, and such objection cannot be considered. The defendant having been duly summoned, its concern is with the declaration or complaint, and not with the writ: Krause v. Penna. R. R. Co., 20 W. N. C. 111; Pentz v. Pentz, 6 Pa. Dist. Rep. 708; Grove v. Barclay, 106 Pa. 155.

The jury was instructed to find the cost of removal, with loss of use up to suit, February 27, 1903, which latter was too favorable to defendant, or if they should find these two items to be more than depreciation or difference in value, then to find such difference, and this is, beyond doubt, the proper measure and the proper form in which to submit the same in such cases: Seely v. Alden, 61 Pa. 302; Stevenson v. Ebervale Coal Co., 201 Pa. 112; s. c., 203 Pa. 316; Hoffman v. Coal Co., 16 Pa. Superior Ct. 631.

OPINION BY MR. JUSTICE POTTER, January 6, 1908:

The plaintiff in this case is the owner of a gristmill located on the Little Conemaugh river, in the borough of Summerhill in Cambria county. The main line of the Pennsylvania Railroad crosses the river at two points above the mill. In 1901 the railroad company straightened its tracks in this vicinity, and erected two stone arched bridges over the river. The first bridge was about 600 feet from the mill, and was built upon the right of way acquired by the railroad company many years ago. The second bridge was more than 3,700 feet from the mill, and was not upon the original right of way. The reservoir created by the milldam was about 5,600 feet in its total length, and extended some 1,900 feet eastwardly and beyond the location of the upper bridge.

In plaintiff's statement it is averred that " during the construction of said railroad and the changing of the roadbed and the building of the bridges and other improvements, the said defendant company have made cuts, fills, grades, and built wooden, iron and stone bridges and trestles in and upon the lands of the plaintiff, and left deposits of earth, rock, stone, timber and other debris in and upon the said lands of the plaintiff; that said deposits of earth, rock, stone, timber and other debris were deposited in the plaintiff's dam or reservoir, thereby reducing the size of the dam or reservoir, and reducing the quantity of water power contained therein."

This action was begun by summons in assumpsit, but in the original statement, and in an amended statement filed by the plaintiff, he claimed to recover damages for injury done to his property by the alleged wrongful acts of defendant.   The defendant demurred, on the ground that the summons being in assumpsit, and the statement claiming damages in trespass, the cause of action had been changed, and the suit could not be maintained.   The court below overruled the demurrer, and its action in so doing constitutes the subject-matter of the first assignment of error here.

Under the authority of our cases, a variance between the writ or declaration in this respect is not a good ground of demurrer; nor can there be, under our practice, oyer of the writ.   In Dillman v. Schultz, 5 S. & R. 35, Justice DUNCAN said (p. 36): "I do not know whether in any stage of an action, advantage could be taken of a variance between the writ and declaration, where the cause of action appeared to be the same.   The cases are collected by Sergt. Williams, in his edition of Saunders in the note to Redman v. Edolph, 1 Saund. 318a, who says, it seems to follow from all the decisions, that no advantage can be taken of a defective original, or of a variance between the writ and the declaration. However this may be, it cannot be taken advantage of where the defendant pleads in bar to the declaration."

In Overseers of Roxborough v. Bunn, 12 S. & R. 291, this court, speaking again by Justice DUNCAN, said (p. 295): "In England, a judgment is never reversed in any court of record, for any variance in any writ, original or judicial, from the declaration or other proceedings: Helliot v. Selby, 2 Salk. 701.   There the court held, that a defendant cannot take advantage of a variance between a writ and count, without craving oyer of the writ.   In Ford v. Burnham, Barnes, 340, the court, as praying oyer of the original, had been much used to delay, came to a resolution not to grant oyer of the original in future; and, so far have the courts discouraged this dilatory course, that with respect to a writ of error for a defective original, as it would be a hard case to set aside a judgment for a mere slip, the master of the rolls would defeat the writ of error by ordering the original to be amended, or, if necessary, granting a new one: Hole v. Finch, 2 Wils. 393; Redman v.

Edolph, 1 Saund. 318a, note. This, however, is not the rule where the variance is in the nature of the action."

In 1 Chitty's Pleading, 9th Am. ed., sec. 244, it is stated that : " Regularly the declaration should correspond with the process, but as according to the present practice of the courts, oyer of the writ cannot be craved, a variance between the writ and the declaration cannot in any case be pleaded in abatement or otherwise."

And again, the same author, in the 16th Am. ed., sec. 269, states that : " It is an indispensable requisite of every declaration that it substantially adhere to the form of action stated in the process, and if it deviate, the defendant may apply to the court or a judge to set aside the declaration for irregularity ; so that the plaintiff must abandon his first process and issue a fresh writ stating a form of action adapted to that in his declaration. But the objection is not a ground of demurrer to the declaration, but merely of a summary application to set aside the declaration for irregularity. . . . If the body of the declaration state a cause of action that is not, nor could be, properly declared for in the form of action stated in the writ, then the deviation would constitute an irregularity and ground for setting aside the declaration, but not a ground of demurrer."

The first assignment of error is therefore dismissed.

It appears that the defendant in this case entered a rule of reference under the compulsory arbitration act, and the cause was referred to arbitrators, who found in favor of the plaintiff in the sum of $4,000. From this award plaintiff appealed. Defendant moved to strike off the appeal, on the ground that the plaintiff had not appeared either in person or by counsel, and had offered no testimony before the arbitrators, and was therefore not entitled to appeal. This motion was overruled by the trial court, and its action in so doing is assigned as error. Counsel for appellant does not cite any authority for his contention in this respect. The compulsory arbitration Act of June 16, 1836, P. L. 715, under which the reference in this case was made, provides expressly in section 17 for the method of proceeding before the arbitrators where only one party attends. By section 27 it is provided that : " Either party may appeal from an award of arbitrators to the court in which such

cause was pending at the time the rule of reference was entered." There is no provision in the act, or, so far as we know, in any subsequent statute, denying the right of appeal to a party who has failed to appear before the arbitrators.

We see no merit in the remaining assignments of error, except in so far as they question the proper application of the measure of damages to the circumstances of this case. The thirty-first assignment of error is based upon the refusal of the trial judge to affirm the defendant's fourteenth point for charge, which was as follows : " There being no evidence of a separation of items of damages, which exclude those coming from the defendant's property and the release of damages affecting the plaintiff's property, and any other claim for damages, the jury is not permitted to guess at such separation, and the verdict must be for the defendant." The point is not well drawn, and its meaning is by no means clear. But if we apprehend aright the meaning which the point was intended to convey, it does raise a distinction between the damage arising from the acts of the defendant and that arising from other causes, which is well taken, and the ignoring of which may well have resulted in great injustice to the defendant.

The twenty-ninth assignment of error raises the same distinction, in complaining of the refusal of the trial judge to affirm the defendant's eighth point for charge, which was " that it is not shown that the defendant is responsible for the sand bar below Laurel Run, which has been accumulating since 1852." If the filling up of the river bed above the breast of the dam was caused in part by debris carried down by flood water from Laurel Run, or by sediment that naturally came down the stream, or was accumulated in the course of years from sources other than the acts of the defendant, then for damages arising from such other causes, if any, the defendant could not be held liable. It was incumbent upon the plaintiff to furnish evidence from which the jury might conclude with some degree of certainty that the deposit of sediment and the filling up of the river bed to the extent testified by witnesses for the plaintiff, was the result solely of the action of the defendant company. And in this particular there seems to have been a failure of proof. To show merely the fact that there was sediment in the river bed, after the date when defendant

company built its bridges at points considerably distant from the dam up the stream, was not sufficient. The question was, did the defendant deposit the debris in the stream to the extent claimed ? Plaintiff was bound to show a reasonable connection between the work of the defendant company and the filling of the dam to the injury of the plaintiff. For whatever earth, sand and debris the defendant cast into the river, which was carried down and lodged against the breast of the dam, or otherwise obstructed the plaintiff in drawing water into his mill race, the defendant was, of course, responsible. But the plaintiff seems to have been allowed to submit to the jury the broad claim that the construction of the piers and abutments of the bridges, situated hundreds of feet above the mill and the breast of the dam, constituted an interference with his water power. This was a mistake. That construction, if properly made, was carried out under the right of eminent domain, after due compensation paid, or secured to be paid, for the property taken. It was only the loose material and debris improperly deposited in the river, or negligently allowed to wash down the stream, and which tended to fill up the river bed to the injury of the water power, which gave rise to the right of action in this case. Plaintiff was entitled to the natural flow of water in the river, and to its storage above his dam breast, at the height for which his construction had provided ; and in so far as the defendant interfered with his rights in this respect, it was liable for damages. But of the immense amount of sediment and deposits found by plaintiff's engineer in the river bed, extending from the breast of the dam, more than a mile up the river, and for a distance of nearly 2,000 feet above the second bridge, we can find nothing in the evidence to show how much of it was in the river bed prior to the construction of the bridges by the defendant company, or how much of it was due to its acts. The burden of proving this essential fact was upon the plaintiff. Instead of meeting this burden plaintiff apparently proceeded upon the theory that all the deposits in the river resulted from the work of the defendant company in building its bridges. This was merely an assumption, not supported by evidence as to how much loose material the defendant put into the river, which could by any reasonable possibility have been washed down the stream or

havo filled up the bed.  The defendant admits that it is responsible for some part of the sediment and loose material which was deposited above the breast of the dam, and near the mouth of the race, and for the damage caused by that amount of the deposit it is willing to pay.  It was for the plaintiff to produce evidence showing what the proportionate amount of damage caused by the acts of the defendant company was. Having failed in this respect, the judgment is reversed and a venire facias de novo is awarded.