Opinion by
Packer, J.,
The greatness of the common law as a system of jurisprudence is ascribable to the principle that a rule which has no reason for its present existence should not defeat substantial rights. A corollary of that principle is the recognized practice of the courts to disregard matters de minimis.
A right of appeal is unquestionably a substantial right. In 1968 it was expressly made a constitutional right, Pa. Const., Art. V, §9. As to compulsory arbitration proceedings, the constitutional right to appeal from the decision of the arbitrators was held to be mandated in view of the constitutional right to a jury trial. Smith Case, 381 Pa. 223, 112 A. 2d 625 (1955). The right to appeal is not absolute and can be subjected to reasonable conditions.
The specific issue in this case is whether the defendant’s appeal in compulsory arbitration was properly quashed because only $10 instead of I17.75[1] was paid to plaintiffs’ attorney for record costs. The defendant in order to take the appeal had paid the filing fee and $120 to reimburse the county for the fees of the three arbitrators. The court below, after argument, had denied the motion to quash the appeal, but more than a month later it reconsidered the matter and quashed the appeal. It is admitted that prior to the end of the 20 day period for taking an appeal defendant’s counsel called plaintiffs’ counsel to obtain his costs and also wrote to him: “Because I have not yet received a copy of your bill of costs, I am enclosing our draft for $10.00, in payment of your costs of record. If this amount is not adequate, I will be glad to review it with you or, *471 upon receipt of a copy of your bill of costs, will promptly consider the items listed therein.” The amount awarded by the arbitrators for the plaintiffs was $3,000.
In another case currently before the Court, Holmes v. Broodno, 222 Pa. Superior Ct. 478, 294 A. 2d 903 (1972), the award by the arbitrators was in the amount of $9,000 and the appeal was quashed because $20 was not paid as record costs, even though $122.50 had been paid to take the appeal. It was agreed by both sides the defendant’s attorney within the 20 day period called, and wrote to, plaintiff’s attorney, asking for the amount of plaintiff’s costs, and that during the 20 day period he received no word from plaintiff’s counsel.
Ancient cases have dealt with the issue when arbitration was compulsory only if demanded by one of the parties. A series of subsequent cases in the past eight years have dealt with the issue in connection with arbitration compulsory on all parties. The issue has become of much more importance because of the increase in the amount involved in compulsory arbitration in several steps from the original limit of $1,000 to the very recent limit of $10,000. The old and the new cases are to be given due regard but it must be in the light of the changed economic conditions and different concepts as to the sporting theory of justice which mechanically called for absolute technical compliance.
The requirement for the payment of costs in order to effect an appeal from arbitrators has an old history. The Act of March 20, 1810, 5 Sm. Laws of Pennsylvania 131, 135 contains the proviso in §XI: “Provided also, That no appeal shall be allowed to either party until the appellant pay all the costs that may have accrued on such suit or action.” The Act of June 16,1836, P. L. 715, §27, 5 P.S. Section 71, as amended, and presently effective, provides that an appealing party: “shall pay all the costs that may have accrued in such *472 suit or action ... Such appeal shall be entered, and the costs paid, and recognizance filed, within 20 days after the day of the entry of the award of the arbitrators on the docket . . . [A]ny party appealing shall first repay to the county the fees of the members of the Board of Arbitrators herein provided for, but not exceeding fifty per cent of the amount in controversy.”
In light of the exaltation of technicality during earlier periods of our jurisprudence it was characteristic that the first cases made it clear that, under the contemporary arbitration acts, an appeal would be dismissed or quashed for failure to pay record costs within 20 days. Walter v. Bechtol, 5 Rawle 228 (1835).[2] The ancient rigidness of this rule is seen in Ellison v. Buckley, 42 Pa. 281 (1882), which held that payment of costs must be in cash. The early obsession with form is further illustrated in the shocking case of Thompson v. White, 4 S. & E. 135 (1818), where an appeal was dismissed because the affidavit on appeal stated that the appellant “believes injustice has been done” instead of stating that he “firmly believes injustice has been done.”
Eventually our courts recognized that the harshness created by the hypertechnical application of these procedural rules was effecting more injustice than serving any substantial purpose. This more humane approach is seen in Schrenkeisen v. Kishbaugh, 162 Pa. 45, 50, 29 A. 284, 286 (1894), where Justice Mitchell reversed an order dismissing an arbitration appeal and that dismissal was based on the failure to pay the appeal costs directly to the prothonotary, stating: “To hold that there was an inexorable necessity that the money should be paid first to the prothonotary and *473 then by Mm to the constable, and that a payment directly by the party liable, to the party entitled finally to receive it was not a valid payment, would be putting form in place of substance, and technicality before right.” Shortly after that decision the rule requiring payment of costs in cash was repudiated and the use of checks was permitted, Burns v. Smith, 180 Pa. 606, 37 A. 105 (1897).
Notwithstanding this early trend towards liberalization, the cases in the past decade stem from the dictum in Budde v. Sandler, 204 Pa. Superior Ct. 36, 201 A. 2d 247 (1964), subsequently followed by three successive cases, Fleisher v. Kaufman, 206 Pa. Superior Ct. 378, 212 A. 2d 846 (1965) (allocatur refused); Madrid Motor Corp. v. Cashan, 206 Pa. Superior Ct. 383, 213 A. 2d 284 (1965) (allocatur refused); Harry C. Erb, Inc. v. Shell Const. Co., Inc., 206 Pa. Superior Ct. 388, 213 A. 2d 383 (1965) (allocatur refused), with Weight, J., dissenting in the three cases. Each of these cases involved the nonpayment of the normal record costs, which rarely exceed $30. In the later case of Friedman v. Egnal, 207 Pa. Superior Ct. 782, 218 A. 2d 838 (1866), the payment was short only by $5.25. In Lanigan v. Lewis, 210 Pa. Superior Ct. 273, 232 A. 2d 50 (1967) (allocatur refused), only the construction that the statutory attorney fee of $3 was not payable as part of record costs, prior to the termination of the appeal, saved the appeal from being quashed. The per curiam decision in Cellini v. Needlemmi, 207 Pa. Superior Ct. 762, 218 A. 2d 839 (1966) that a motion to quash should be sustained, even though the motion was not made until after the Common Pleas trial, was expressly overruled in Elliott v. Lenzi, 213 Pa. Superior Ct. 510, 249 A. 2d 925 (1968) (allocatur refused).
In Beth-Allen Sales Co. v. Hartford Insurance Croup, 217 Pa. Superior Ct. 42, 268 A. 2d 203 (1970), *474 our court held that an arbitration appeal need not be quashed for noncompliance with the detailed requirement of recognizance. There Judge Hoffman followed the modern view of the sufficiency of substantial compliance (217 Pa. Superior Ct. at 47, 268 A. 2d at 206) : “This decision is based on the belief that where a party has made an honest effort to file his appeal in accordance with the statute, and has substantially complied with the requirements, justice will not permit his appeal to be dismissed with prejudice.” He underscored the undesirability of reliance upon immaterial formalities (217 Pa. Superior Ct. at 48, 268 A. 2d at 206) : “To quash the appeal in these circumstances would result in a return to the supremacy of form over substance and the exaltation of technical detail over justice, an approach which courts in all areas have been opposing for many years.”
Notwithstanding the foregoing, the last word on the specific issue is in Manton v. Marini, 218 Pa. Superior Ct. 298, 280 A. 2d 403 (1971), Weight, P. J., dissenting. There the plaintiff moved to quash because the defendant had sent a check to plaintiff’s counsel for $32.50 instead of $34.50.[3] This Court affirmed the quashing of the appeal even though the defendant had paid all the other costs, even though the finding for the plaintiffs was in the amount of $7902, and even though the defendant had filed a bond in the amount of $15,804. This result because of the nonpayment of $2!
With inflation making the few dollars of record costs worth less, and with the increase in the amount of money which may be involved in arbitration proceedings, it becomes more manifest that record costs as compared to the dollars in controversy are matters de *475 minimis. Ordinarily regular record costs in Philadelphia rarely exceed $30. Bills of costs can be in varying amounts but normally are much less than the $35 which must be paid by the appealing party for each member of the arbitration panel, plus an extra $15 for the chairman.
The right to appeal is properly subject to a fixed temporal condition of twenty days. It serves a meaningful purpose to know when a matter has finality. Likewise, a requirement of security as a condition of appeal is a reasonable requirement within the legislative province. Commonwealth v. Phila. Eagles, lnc., 437 Pa. 25, 261 A. 2d 309 (1970). The requirement of payment to counsel for the other side of a relatively small amount with all kinds of variations as to what that small amount is serves no real function as a condition of appeal and can raise a serious question of constitutionality. In any event, the requirement can truly be viewed as a matter de minimis. Although attorneys are supposed to know the law and to know how to take appeals, there is no reason to continue to maintain a legal trap which may cut down some appeals, but which puts counsel in a demeaning condition, creates bad public relations, and tends to cause additional malpractice litigation.
The time has come to prohibit the use of a meaningless, de minimis condition to quash appeals. That position stands as a blemish[4] upon a great program, initiated in Pennsylvania and being followed elsewhere,[5] for the improvement of the administration of justice. More consonant to the demands of some legal technicians, the same result can be reached by stating very *476 simply that the 20 day time limit and the furnishing of security are properly jurisdictional requirements but the requirement for the payment of costs is directory rather than mandatory.[6]
The order of the court below quashing the appeal from the decision of the arbitrators is reversed.

 Record costs were: prothonotary $14; sheriff $2.75; and notary fees $1. Additional costs had not been taxed and hence were not payable. Ellison v. Buckley, 42 Pa. 281 (1862) ; see Madrid Motor Corp. v. Cashan, 206 Pa. Superior Ct 383, 213 A. 2d 284 (1965).

 An early attack upon the constitutionality of requiring the payment of costs in an arbitration appeal was unsuccessful in McDonald v. Schell, 6 S. & R,. 240 (1820).

 As to an additional defendant, the defendant had sent a check to his counsel for $8 instead of $29.

 Apfel, “Budde v. Sandler: A Pandora’s Box for the Philadelphia Lawyer?” 38 Temp. L.Q. 159 (1965).

 King, “Arbitration in Philadelphia and Rochester,” 58 American B.A.J. 712 (1972).

 “Generally those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey no prejudice will occur to those whose rights are protected by the statute are not commonly considered mandatory. Likewise, if the act is performed but not in the time or in the precise manner directed by the statute, the provision will not be considered mandatory if the purpose of the statute has been substantially complied with and no substantial rights have been jeopardized.” 2 Sutherland, Statutory Construction §2802, p. 216 (3d ed. 1943) ; cf. Prichard v. Willistown Twp. Sch. Dist., 394 Pa. 489, 147 A. 2d 380 (1959).