## Gwen VANDEN–BRAND

### v.

## PORT AUTHORITY OF ALLEGHENY COUNTY, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 8, 2007.

Decided Nov. 30, 2007.

---

Joseph E. Starkey, Jr., Pittsburgh, for appellant.

Cynthia M. Porta–Clark, Pittsburgh, for appellee.

BEFORE: COLINS, Judge, PELLEGRINI, Judge, and FRIEDMAN, Judge.

OPINION BY Judge PELLEGRINI.*

The Port Authority of Allegheny County (Port Authority) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) denying its post-trial motion seeking a new trial or, alternatively, a molded verdict within the jurisdictional limits of compulsory arbitration.

The facts that underlie this appeal are as follows. On October 8, 2002, Gwen Vanden–Brand (Vanden–Brand) sustained an injury when she fell from a bus owned and operated by the Port Authority. She filed a complaint in the arbitration division of the trial court alleging that her claims against the Port Authority were within the $25,000 jurisdictional limits of compulsory arbitration. After an arbitration panel entered judgment in favor of the Port Authority, Vanden–Brand appealed to the trial court, and a *de novo* trial was scheduled on January 11, 2006.

* This opinion was reassigned to the author on October 9, 2007.

On November 23, 2005, Vanden–Brand filed a pre-trial statement that included a November 7, 2005 written report (Pre-trial Report) containing the opinions of her expert medical witness, Larry Dobkin, M.D. (Dr. Dobkin), who was also her treating physician and a specialist in internal medicine. In his report, Dr. Dobkin opined that with regard to future treatment of Vanden–Brand's injury, nothing could improve her condition besides heavy doses of narcotics, and surgery was not viable to improve her condition. Dr. Dobkin made no mention of other possible future medical treatment.

On January 6, 2006, five days before trial, Dr. Dobkin's testimony was videotaped for use at trial. Besides the treatments set forth in his Pre-trial Report, Dr. Dobkin also discussed two new future treatment options that could have possibly improved Vanden–Brand's condition, namely, the administration of hypodermic nerve blockers by a neurosurgeon and vertebroplasty surgery performed by a neurosurgeon. He was unable, however, to offer any opinion as to the effectiveness of these treatments and acknowledged that the ultimate decision to perform them would remain with a neurosurgeon. The Port Authority filed a motion in limine to exclude these portions of Dr. Dobkin's testimony because they were beyond his expertise and beyond the opinions set forth in his Pre-trial Report. The trial court denied its motion and permitted the admission of Dr. Dobkin's testimony involving Vanden–Brand's future medical treatments in full.

■ Following a brief trial, the jury was instructed that the amount to be awarded to Vanden–Brand had to compensate her for past and future damages, including those medical expenses which she would reasonably incur in the future for the treatment of her injury. It returned a verdict for Vanden–Brand for $100,000. The Port Authority filed a post-trial motion, again arguing, among other things, that Dr. Dobkin's testimony was beyond the scope of his expertise and the fair scope of his Pre-trial Report. Alternatively, it sought to mold the verdict to reflect the $25,000 jurisdictional limit on compulsory actions. In denying the motion, the trial court stated that although his trial testimony went beyond the contents of his Pre-trial Report, the Port Authority "knew of [Dr. Dobkin's] potential testimony through Vanden–Brand's Pre–Trial Statement, including his Report and her medical records." (Reproduced Record at 108a.) The trial court also refused to mold the verdict holding that because appeals from the arbitration division were *de novo*, the $25,000 compulsory limit did not apply. This appeal followed.[1]

■ The Port Authority first argues that the trial court erred in refusing to mold the verdict to reflect the $25,000 jurisdictional limit on compulsory arbitration claims. It contends that Vanden–Brand initially filed her complaint in arbitration, but because she failed to amend her claim to allege damages in excess of the jurisdictional limit, she waived her right to recover damages in excess of $25,000.

In *Weber v. Lynch,* 473 Pa. 599, 375 A.2d 1278 (1977), our Supreme Court addressed appeals taken from compulsory arbitration and stated:

We therefore conclude that, although section 27 of the Arbitration Act provides for *de novo* *appeals* from compulsory arbitration, the legislature intended

---

1. Our scope of review of a denial of a motion for a new trial is limited to determining whether the trial court abused its discretion or committed an error of law. *Buzzelli v. Port Authority of Allegheny County,* 674 A.2d 1186 (Pa.Cmwlth.1996).

such appeals, once perfected, to proceed to trial with no evidentiary limitations upon the parties other than those which would be applicable to an original trial. It is significant in this regard that an award made pursuant to compulsory arbitration is not itself a judgment ... [P]ursuant to a "constitutional right of appeal for trial de novo," [one's] right to trial by jury must remain "unfettered." We hold that the statutory right to a de novo appeal instantly includes the unfettered right to present at trial competent and relevant evidence.

*Id.,* 473 Pa. at 610, 375 A.2d at 1283. (Citations omitted.) Even though Vanden–Brand may not have amended her complaint or transferred it to the general docket, the trial court did not err in failing to mold the verdict because appeals from an arbitration award, like the one taken by Vanden–Brand, are *de novo,* and, as such, a new trial is to be conducted without conditions placed upon the trier of fact with respect to assessing damages according to arbitration limits. Consequently, the trial court's refusal to mold the verdict was proper.

■ The Port Authority next argues that the trial court erred in allowing Dr. Dobkin to testify regarding possible future neurosurgical treatment because his opinions on the issue contradicted his Pre-trial Report and exceeded his qualifications as an internist. Specifically, it asserts that his trial testimony was inconsistent with the Pre-trial Report wherein he opined that the only viable future treatment option for Vanden–Brand was doses of narcotics, and it further maintains that Vanden–Brand submitted no evidence that would have qualified Dr. Dobkin to render a neurosurgical opinion. The Port Authority also contends that it was deprived of a reasonable opportunity to prepare for or rebut Dr. Dobkin's testimony because it

first learned of his new opinions on Vanden–Brand's future treatment options five days before trial. It argues that this testimony improperly impacted the jury verdict, and the only proper remedy is to be granted a new trial.

Under the Pennsylvania Rules of Civil Procedure, an expert witness may not testify on direct examination to matters that are inconsistent or beyond the fair scope of matters testified to in discovery proceedings or not included in a separate report. "To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings ... the direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto. However, the expert shall not be prevented from testifying as to facts or opinions on matters on which the expert has not been interrogated in the discovery proceedings." Pa. R.C.P. No. 4003.5(c); *see also Walsh v. Kubiak,* 443 Pa.Super. 284, 661 A.2d 416 (1995).

Despite the trial court's assertion that the Port Authority was not adversely affected by Dr. Dobkin's testimony because it knew of his potential opinions included in the Pre-trial Report months prior to trial, this would not have helped the Port Authority prepare for his trial testimony because it made no mention of the two additional procedures he testified were potential future medical treatments. Dr. Dobkin opined in his Pre-trial Report that nothing could be done to improve Vanden–Brand's condition besides heavy doses of narcotics, and surgery was not a viable option. Inconsistent with his earlier report, he then testified that Vanden–Brand could experience improvement from hypodermic nerve blockers or vertebroplasty, a

type of surgery. The discrepancy between Dr. Dobkin's Pre-trial Report and trial testimony prevented the Port Authority from making a meaningful response or procuring its own expert to counter his opinions and could have misled the jury in its consideration of the extent of Vanden–Brand's future medical needs. As a result, the Port Authority was prejudiced by the admission of Dr. Dobkin's testimony. *See Woodard v. Chatterjee*, 827 A.2d 433 (Pa.Super.2003) (expert medical witness' testimony at trial was prejudicial when it went beyond the matters discussed in initial report).

■■■ Moreover, even if the Port Authority was not prejudiced by the failure of Dr. Dobkin to include the two additional procedures in his Pre-trial Report, Dr. Dobkin's testimony should not have gone to the jury because he was less than certain of their efficacy.[2] Regarding the procedures, Dr. Dobkin testified as follows:

Q: So you're not offering a medical opinion on your own that this injection would be performed or would be medically necessary?

A: That they would definitely be performed, no, or medically necessary, again, no; but I would think, my thinking would, that it's a possibility. And I would like to see if somebody who performs that would think that would be appropriate.

(Reproduced Record at 26a.) He further stated:

Q: Okay. And so, again, neither the injections nor the vertebroplasty— you're not offering any opinion within your own medical area of expertise as to the necessity or success of that type of course of treatment; is that correct?

A: No. I think it's something to consider. Would it definitely be appropriate with lumbar alignment indefinitely, no—

Q: Okay.

A:—I can't say that.

(Reproduced Record at 27a–28a.) While a physician may testify in a field outside of his or her area of specialty, provided that the areas overlap or he or she has experience in another related field, *Commonwealth v. Browdie*, 439 Pa.Super. 642, 654 A.2d 1159 (1995), Vanden–Brand failed to establish an overlap between internal medicine and neurosurgery or that Dr. Dobkin had experience in the field of neurosurgery. *See also Yacoub v. Lehigh Valley Medical Associates, P.C.*, 805 A.2d 579 (Pa.Super.2002). Testifying beyond his specialty in internal medicine, he explained that one suggested neurological treatment option was a "possibility," and he was uncertain whether either the injections or vertebroplasty could improve Vanden–Brand's condition. Because this testimony as to the necessity and success of the treatments was speculative, Dr. Dobkin was not qualified to render an opinion as to any future neurological treatment.

Accordingly, because the trial court erred in permitting Dr. Dobkin to testify beyond the scope of his initial report and area of expertise, the order of the trial court is vacated as to the issue of damages, and the matter is remanded for a new trial on damages only.

### ORDER

AND NOW, this *30th* day of *November,* 2007, the order of the Court of Common Pleas of Allegheny County, dated October 13, 2006, is affirmed as to the finding of

---

**2.** An expert witness must have a reasonable pretension to specialized knowledge on the subject under investigation. *Hooker v. State Farm Fire & Casualty Company,* 880 A.2d 70 (Pa.Cmwlth.2005).

liability but is vacated as to the issue of damages, and the matter is remanded for a new trial on damages only.

Jurisdiction relinquished.

### DISSENTING OPINION BY Judge COLINS.

I must respectfully dissent from the opinion of the majority.

I disagree with the majority's statements that: "The discrepancy between Dr. Dobkin's pre-trial report and trial testimony prevented the Port Authority from making a meaningful response or procuring its own expert to counter his opinions and could have misled the jury in its consideration of the extent of Vanden–Brand's future medical needs. As a result, the Port Authority was prejudiced by the admission of Dr. Dobkin's testimony." I find that this conclusion is not supported by substantial evidence in the record.

In so doing, I concur with the Trial Court's finding that the Port Authority's contention, that it could not adequately respond to Dr. Dobkin's trial testimony because of the discrepancy between that testimony and Dr. Dobkin's pre-trial medical reports concerning Vanden–Brand's prognosis, to be without merit. Although Dr. Dobkin's report limited its discussion of Vanden–Brand's possible future treatment choices to significant doses of narcotics, and deemed surgical treatment not viable, his trial testimony expanding Vanden–Brand's possible treatment options to include hypodermic nerve blockers or vertebroplasty, a surgical modality, does not posit such radical or non-traditional procedures as to preclude the Port Authority from being able to make a meaningful response. It is disingenuous of the Port Authority to expect this Court to believe that in the course of preparing its response to Dr. Dobkin's initially suggested treatment options, it never encountered mention of his subsequently posited surgical treatment options, so as to prejudice the Port Authority and preclude its ability to adequately respond.

I further concur with the Trial Court's dismissal of the Port Authority's contention that Dr. Dobkin's testimony exceeded the scope of his expertise and report. The courts on this issue have stated

> In deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair[.]" The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the response
>
> . . . .

(Citations omitted.)

*Corrado v. Thomas Jefferson University Hospital,* 790 A.2d 1022, 1029 (Pa.Super.2001), *quoting Brady v. Ballay, Thornton, Maloney Med.,* 704 A.2d 1076, 1079 (Pa.Super.1997). Additionally, "the opposing party must be prejudiced as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error." *Coffey v. Minwax Co.,* 764 A.2d 616, 621(Pa.Super.2000), *quoting Petrasovits v. Kleiner,* 719 A.2d 799, 804 (Pa.Super.1998).

Applying the *Corrado* rationale to the present matter, I find that no evidence of record supports the Port Authority's argument that Dr. Dobkin's testimony concerning Vanden–Brand's future treatment options, when compared with his pre-trial reports and medical records, contained such surprises as to be prejudicial to Port Authority's ability to respond.

Accordingly, I would affirm the Trial Court's order.